EDWIN G. BURNHAM *vs.* MARY C. FRETZ AUSTIN.

Hancock.　Opinion February 26, 1909.

*Waiver.　Same a Matter of Intention.　How Waiver may be Proved.*

Waiver is essentially a matter of intention, yet such intention need not necessarily be proved by express declaration ; it may be inferred from the acts of the party and most often is shown by his action or non-action.

Waiver may be proved by express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by a course of acts and conduct, or by so neglecting and failing to act, as to induce a belief that it was the intention and purpose to waive.

The defendant gave the plaintiff a written permit dated December 21, 1906 to enter upon certain lands owned by her and to cut and remove therefrom wood to be manufactured into staves, expressly reserving all cedar and pine.　The stave wood was to be all removed before April 1, 1907, at which time the agreement was to terminate.　The plaintiff was to pay stumpage at the rate of one dollar per cord, the first payment to be made when 500 cords had been cut.　The plaintiff entered and began operations when on December 31, 1906, he was notified in writing by defendant that he had broken his contract, that his cutting after January 1, 1907, would be wholly at her sufferance and that all his crews must leave the premises on or before January 10, 1907, unless they confined themselves to cutting and

hauling fir, and such spruce as her agent Clark might designate. This
notice the plaintiff read to his crews and from that time on he operated in
compliance with these restrictions. Payments for stumpage were made by
the plaintiff to the defendant as each 500 cords were cut, as provided in
the contract, the last payment being in March, 1907. September 24, 1907,
the plaintiff brought an action against the defendant for breach of the
contract.

*Held:* That if on December 31, 1906, the plaintiff had any right of action the
evidence so clearly shows a waiver on his part that a recovery is precluded.
The things that the plaintiff did and the things that he failed to do can be
reconciled on no other theory than that either he claimed no right of
action or voluntarily relinquished it.

On exceptions by plaintiff.    Overruled.

Action of assumpsit to recover damages for an alleged breach of
a written contract in the form of a logging permit.    Plea, the general
issue, with brief statement setting up certain alleged equitable
defenses.    At the conclusion of the evidence, the presiding Justice
directed a verdict for the defendant and thereupon the plaintiff
excepted.

The case is stated in the opinion.

*John A. Peters,* for plaintiff.

*Deasy & Lyman,* for defendant.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, PEABODY,
CORNISH, BIRD, JJ.

CORNISH, J.    In this action of assumpsit the plaintiff seeks to
recover damages for breach of a written contract in the form of a
logging permit dated December 21, 1906.    At the close of the
testimony the presiding Justice directed a verdict for the defendant,
and the case comes before this court on plaintiff's exceptions to this
ruling.

The permit in question gave the plaintiff the right to enter upon
certain lands owned by her in the town and county of Hancock, and
"to cut and remove therefrom, wood to be manufactured into
staves."  .  .  .    All cedar and pine wood growing upon said
land was expressly reserved.    Said stave wood was to be all removed
before April 1, 1907 at which time the agreement was to terminate.
The plaintiff was to pay stumpage at the rate of one dollar per cord,

the first payment to be made when five hundred cords had been cut. This written agreement was the result of certain prior conversations between the parties and at the time of its execution, the plaintiff had already placed his crews upon the defendant's land and had commenced the operation.   He continued cutting both spruce and fir for ten days after the contract was signed, when on Dec. 31, 1906 he was notified in writing by the defendant that he had broken his contract, that his cutting after January 1, 1907 would be wholly at her sufferance, and that all his crews must leave the premises on or before January 10, 1907 unless they confined themselves to cutting and hauling fir, and such spruce as her agent Willard Clark, might designate.   This notice the plaintiff read to his crews and from that time on he operated in compliance with these restrictions.   Payments for stumpage were made by the plaintiff to the defendant as each five hundred cords were cut, as provided in the contract, the last payment being in March, 1907.

This suit for breach of contract was brought September 24, 1907. The legal rights of parties under such contracts have been frequently defined by this court.   A permit of this sort constitutes an executory contract for the sale of the wood or timber after it shall have been severed from the soil and converted into chattel property, together with a license in the permittee to enter upon the land for the purpose of cutting and removing it.   This license is revokable on the part of the land owner as to the wood or timber not severed from the land, but such revocation without legal cause works a breach of the contract.   *Emerson* v. *Shores*, 95 Maine, 237 ; *Pierce* v. *Bunton*, 98 Maine, 553.

The defendant in the case at bar sets up as her reason for revocation, an agreement on the part of the plaintiff not to cut any spruce suitable for manufacture into long lumber and his violation of this agreement by cutting all spruce in the path of his operation.

In her plea the defendant alleged that this provision was omitted from the written contract by mistake and inadvertence, and asked to have the contract reformed so as to embrace that condition, but this equitable defense is not now insisted upon.

Instead, while admitting that the written contract allows the cutting of all spruce, the defendant relies upon the same parol agreement, as existing independent of and collateral to the written agreement, and provable under and enforceable through the rules of law. The plaintiff replies that the contract between the parties was reduced to writing and that parol evidence cannot be introduced to vary or contradict it.

Whether such an independent agreement was made was a question of fact for the jury. The defendant and her husband testify positively to its existence. The plaintiff fails to remember accurately what was said in regard to the spruce. Were this the only point in defense we should hesitate to say that the case should have been taken from the jury and that a verdict in favor of the plaintiff on this issue would not be allowed to stand. If such collateral agreement was made its legal effect would be for the court and we are not inclined to extend the doctrine of independent collateral agreements as expressed in *Neal* v. *Flint*, 88 Maine, 72, beyond its legitimate sphere. See *Chaplin* v. *Gerald*, 104 Maine, 187. But upon another point raised in defense, the plaintiff fails, and that is the question of waiver. If on December 31, 1906 he had any right of action the evidence so clearly shows a waiver on his part that recovery is precluded. Waiver is essentially a matter of intention, yet such intention need not necessarily be proved by express declaration; it may be inferred from the acts of the party and most often is shown by his action or non-action. *Peabody* v. *Maguire*, 79 Maine, 572; *Stewart* v. *Leonard*, 103 Maine, 128. It is the voluntary relinquishment of a known right, which, but for such waiver the party would have enjoyed. "It may be proved by express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by a course of acts and conduct, or by so neglecting and failing to act, as to induce a belief that it was his intention and purpose to waive." *Farlow* v. *Ellis*, 15 Gray, 229-231.

The things that the plaintiff here did and the things that he failed to do can be reconciled with no other theory than that either he claimed no right of action or voluntarily relinquished it. When

the defendant wrote him the letter of revocation ten days after the contract was executed, he seemed to accept the situation for he went at once to his different crews, read the notice to them and explained that thenceforth the work must be done under the direction of Willard Clark, the defendant's agent. From that time without objection on his part the spruce was cut just as Clark dictated. The plaintiff did not leave the work and claim damages for breach of contract but saw fit to remain and operate under the new arrangement. The work continued without a day's suspension and without a word of protest on his part. He saw the defendant and her agent several times but never claimed or intimated that the contract of December 21st was subsisting, or that she had broken the same and that he claimed damages therefor. His first demand was the service of this writ. He made payments and settlements with her under the new regime without a murmur of dissent.

But his own letter written to the defendant soon after the revocation is conclusive on this point. In this he pleads for the privilege of continuing work and practically admits the justice of the defendant's position. He says "No matter what is being told you, I am using every effort to cut just as you want it done . . . I think about all the spruce that has been hauled was cut before we had the men shown just how they should cut; I have been with Willard among the crews and I thought they all talked as though they would do the right thing, and I want to have it done, but of course they never around here cut timber only just as they had a chance to cut all before them; I am willing to go at all times with Willard or any one you designate and we will do all we can to further your interest."

Such language gives color to the defendant's contention as to the contract itself, and is utterly inconsistent with the existence of a legal claim which the writer intended to enforce. "A waiver is indeed the intentional relinquishment of a known right; but the best evidence of intention is to be found in the language used by the parties. The true inquiry is what was said or written and whether what was said indicated the alleged intention. The plaintiff had a right to act on the natural interpretation of the corres-

pondence, and the defendant's conduct in reference to it.   The secret understanding or intent of the defendants or their agents could not effect his rights."   *West* v. *Platt,* 127 Mass. 367.   In the case at bar the evidence of even a secret intent is lacking for not even at the trial did the plaintiff state that he had such intent nor did he attempt to explain his words and acts, tending to show the contrary.

Under such circumstances the ruling of the presiding Justice in directing a verdict for defendant was correct, as the evidence presented was insufficient to support a verdict for the plaintiff. *Day* v. *B. & M. R. R.,* 97 Maine, 528.

*Exceptions overruled.*